```
                IN THE UNITED STATES DISTRICT COURT

                     FOR THE DISTRICT OF OREGON

NEIL CHAPMAN,                                           CV. 06-308-HU

             Petitioner,            FINDINGS AND RECOMMENDATION
     v.

ROBERT LAMPERT,

             Respondent.
```

Nell I. Brown
Assistant Federal Public Defender
101 S.W. Main St., Suite 1700
Portland, Oregon 97204

    Attorney for Petitioner

John R. Kroger
Attorney General
Jonathan W. Diehl
Assistant Attorney General
Department of Justice
1162 Court Street N.E.
Salem, Oregon 97301-4096

    Attorneys for Respondent

HUBEL, Magistrate Judge

    Petitioner, an inmate at the Snake River Correctional Institution, brings this habeas corpus proceeding pursuant to 28

1 -- FINDINGS AND RECOMMENDATION

U.S.C. § 2254. For the reasons set forth below, the second amended petition should be denied, and this proceeding should be dismissed.

## BACKGROUND

On October 27, 1994, petitioner was indicted on charges that he sexually abused his daughter "B.C.", when she was between the ages of seven and twelve. B.C., who was sixteen at the time of trial, testified that petitioner routinely slept with her from an early age. B.C. testified that petitioner raped her several times, when she was a toddler, while the family was living in Arizona.

B.C. and her family moved to Oregon when she was six or seven years old. B.C. testified that petitioner began sleeping in her room three to four times per week, and that he repeatedly stuck his finger in her vagina and anus, fondled her breasts, and forced her to massage his penis. She testified to several incidents of abuse which she recalled because they were tied to other events in her life.

Specifically, B.C. testified to sexual abuse which occurred (1) when her step-brother Steve Chapman stayed with the family; (2) during spring or summer break of her sixth year in elementary school; (3) when her grandmother visited; and (4) after being forced to move irrigation pipes and being chased by a cow. When questioned about why she never reported the abuse, B.C. explained she feared petitioner. B.C. testified that petitioner threatened her; shot several of her dogs, including a dog named Morgan; cut

2 -- FINDINGS AND RECOMMENDATION

the bottom of her foot with a knife; told her that he had killed her step-brother Steve Chapman; and carried a gun at all times.

B.C.'s mother, Delia Costley-Jones; her grandmother; and her siblings, Jacob and Stacyann, confirmed much of B.C.'s testimony. All of these individuals testified that they saw petitioner go into B.C.'s bedroom at night. Delia, Jacob, and Stacyann testified that B.C. feared petitioner, and that petitioner had threatened to kill them. Delia confirmed that petitioner had killed several family dogs, including Morgan; and that he had told the children that he had killed Steve Chapman. Delia, Jacob, and Stacyann all testified that petitioner was a sociable person and acted differently around friends.

Dr. Catherine Speckman testified at length regarding petitioner's "extremely bizarre and abusive" relationship with B.C. Dr. Speckman interviewed petitioner's family and friends, prior to B.C.'s disclosure of the sexual abuse, as part of a child custody evaluation during divorce proceeding between petitioner and Delia. Dr. Speckman testified that B.C. denied any sexual abuse by her father. However, Dr. Speckman was gravely concerned about possible sexual abuse, because both petitioner and B.C. told her that petitioner slept in B.C.'s bed approximately twice a week.

Dr. Speckman testified that B.C.'s relationship with her father was marked by threats, random violent behavior, extreme manipulation, and a total isolation of the family. Dr. Speckman

3 -- FINDINGS AND RECOMMENDATION

testified that petitioner had admitted to killing B.C.'s dog, Morgan, in front of petitioner while she screamed for him to stop. Dr. Speckman recounted a story B.C. shared about petitioner killing her cat, and then causing the cat to "reappear," over the course of five days, on a path where B.C. had to walk.  Dr. Speckman opined that the killing of B.C.'s cat was an example of petitioner's "extreme control and manipulation" of B.C.'s free will.  "That she had to obey at all costs or, you know, there would be a threat of either abuse to her or abuse to others."  TR (March 19, 1996) at 109.

Dr. Speckman also testified that she was extremely concerned about petitioner's odd demeanor when describing B.C.'s maturation:

> He stated, "I've been so careful when she got breasts I turned so I wouldn't bump into her and wouldn't excite her.  When she came to kiss me I would turn my cheek because little girls like to try out a real kiss on me, you know."  He appeared to be insinuating that his daughter at this age was interested in sexual activity with him and . . . the sexual details of his own life. His affect was strange marked by wide smiles in describing his daughters.  He also stated that he had been very careful not to ever shake them, quote, "So that I didn't shake their ovaries loose.  You know how you can damage girls," unquote.

Id. at 122.

Dr. Michael Loren Weeks testified that B.C. had numerous small tears through her hymen which were consistent with digital or penile penetration as described by B.C.

4 -- FINDINGS AND RECOMMENDATION

In his defense, petitioner denied sexually abusing B.C., and offered evidence to establish that Delia had encouraged B.C. to fabricate the allegations in an effort to avoid the payment of money owed to petitioner as a result of divorce proceedings and/or to avoid turning over personal property to petitioner which were the subject of a contempt proceeding.  Petitioner denied telling the children that he killed Steve Chapman; and petitioner testified that Steve Chapman killed B.C.'s dog Morgan.  In addition, petitioner presented the testimony of eighteen witnesses, sixteen of whom testified that B.C. seemed happy, and that petitioner had a "normal" father-daughter relationship with B.C.  On cross examination, however, the witnesses acknowledged that people often act differently in public than they do in private.

Petitioner was convicted by a jury of five counts of Sexual Penetration in the First Degree, seven counts of Sexual Abuse in the First Degree, and one count of Sexual Abuse in the Second Degree.  Petitioner was sentenced to a total of 372 months imprisonment.

Petitioner filed a direct appeal, raising a single state law claim - that the trial court erred in admitting prior bad acts evidence that petitioner had raped B.C. when she was between the ages of two and five.  The Oregon Court of Appeals affirmed from the bench, and the Oregon Supreme Court denied review. <u>State v.</u>

Chapman, 155 Or. App. 489, 964 P.2d 1156, rev. denied, 328 Or. 40 (1998).

In 1999, petitioner sought state post-conviction relief raising numerous claims of ineffective assistance of trial and appellate counsel. Petitioner raised additional claims in a 74-page *pro se* supplemental memorandum. The post-conviction court refused to consider petitioner's *pro se* grounds for relief as insufficiently pled, and denied the claims contained in his formal petition on the merits. On appeal, petitioner's sole assignment of error was that trial counsel failed to adequately investigate and thereby failed to call Stephan White as a witness. The Oregon Court of Appeals affirmed without opinion, and the Oregon Supreme Court denied review. Chapman v. Lampert, 201 Or. App. 732, 122 P.3d 143 (2005), rev. denied, 340 Or. 34 (2006).

On or about January 25, 2005, petitioner filed a successive state post-conviction proceeding challenging his sentence on the basis that the trial judge made factual findings, in support of departure and consecutive sentencing, which should have been made by a jury. The post-conviction court dismissed the petition, the Oregon Court of Appeals affirmed without opinion, and the Oregon Supreme Court denied review. Chapman v. Hill, 206 Or. App. 520, 138 P.3d 62, rev. denied, 341 Or. 244 (2006).

///

///

6 -- FINDINGS AND RECOMMENDATION

**DISCUSSION**

I.      **Procedurally Defaulted Claims**.

Generally, a state prisoner must exhaust all available state court remedies either on direct appeal or through collateral proceedings before a federal court may consider granting habeas corpus relief.  28 U.S.C. § 2254(b)(1); Cook v. Schriro, 538 F.3d 1000, 1025 (9th Cir. 2008), cert. denied, 2009 WL 129180 (2009). A state prisoner satisfies the exhaustion requirement by fairly presenting his claim to the appropriate state courts at all appellate stages afforded under state law.  Cook, 538 F.3d at 1025; Baldwin v. Reese, 541 U.S. 27, 29 (2004).

When a state prisoner fails to exhaust his federal claims in state court and the state court would now find the claims barred under applicable state rules, the federal claims are procedurally defaulted.  Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1991). Similarly, if a federal constitutional claim is expressly rejected by a state court on the basis of a state procedural rule that is independent of the federal question and adequate to support the judgment, the claim is procedurally defaulted.  Id. at 729-30; Cook, 538 F.3d at 1025.  Habeas review of procedurally defaulted claims is barred unless the petitioner demonstrates cause for the procedural default and actual prejudice, or that the failure to consider the claims will result in a miscarriage of justice. Coleman, 501 U.S. at 750; Cook, 538 F.3d at 1028.

7 -- FINDINGS AND RECOMMENDATION

### A.   Grounds for Relief 1-4 and 6-10.

Respondent moves to deny habeas corpus relief as to grounds for relief 1-4 and 6-10 on the basis that petitioner procedurally defaulted his available state remedies by failing to raise them on appeal from the denial of post-conviction relief. Petitioner does not dispute the procedural default, and advises the court that he is not pursuing grounds for relief 1-4 and 6-10. Accordingly, those grounds for relief should be denied as procedurally defaulted.

### B.   Ground for Relief Eleven.

Respondent moves to deny habeas corpus relief as to ground for relief eleven on the basis that it was raised in a successive state post-conviction proceeding which was dismissed based upon an independent and adequate state procedural rule. In response, petitioner argues that the state court did not clearly and expressly rely upon an independent and adequate state procedural rule in dismissing the post-conviction proceeding and, therefore, the claim should not be considered procedurally defaulted.

I agree that the claim is not procedurally defaulted. See Belmontes v. Ayers, 529 F.3d 834, 855 (9th Cir. 2008) (citing Harris v. Reed, 489 U.S. 255, 262-63 (1989)) (where state court did not clearly and expressly rely solely upon procedural default in rejecting claim, federal habeas court may address merits). However, petitioner's claim fails on the merits because it is well

8 -- FINDINGS AND RECOMMENDATION

settled that the rules announced in Apprendi v. New Jersey, 530 U.S. 466 (2000), and Blakely v. Washington, 542 U.S. 296 (2004), do not apply retroactively on collateral review.  See Schardt v. Payne, 414 F.3d 1025, 1038 (9th Cir. 2005).

Moreover, to the extent that petitioner is challenging the constitutionality of his consecutive sentences, the ground lacks merit in light of the Supreme Court's recent Supreme Court ruling that Apprendi and Blakely do not apply to Oregon's consecutive sentencing statute.  Oregon v. Ice, 129 S.Ct. 711 (2009). Accordingly, the state court's rejection of this ground for relief is neither contrary to, nor an unreasonable application of, clearly established federal law.  28 U.S.C. § 2254(d).

**C.   Ground for Relief Twelve.**

Respondent moves to deny ground for relief twelve on the basis that the admission of prior bad acts evidence was challenged on direct appeal solely on state law grounds.  In response, petitioner concedes that the federal nature of the claim was not presented to the state court, but argues that the ground for relief should be considered by this court on the basis that he has presented evidence of his actual innocence that creates a gateway for this court to address the merits of his procedurally defaulted claims under Schlup v. Delo, 513 U.S. 298 (1995).  I disagree.

Under Schlup, a petitioner's otherwise-barred claims may be considered on the merits if his claim of actual innocence is

9 -- FINDINGS AND RECOMMENDATION

sufficient to bring him within the narrow class of cases implicating a fundamental miscarriage of justice. 513 U.S. at 314-15; House v. Bell, 547 U.S. 518, 522 (2006). To be credible, a claim of actual innocence "'requires petitioner to support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eye-witness accounts, or critical physical evidence - that was not presented at trial.'" Cook, 538 F.3d at 1028 (quoting Schlup, 513 U.S. at 324); House, 547 U.S. at 537. Petitioner must show that, in light of *all* the evidence, including the evidence not introduced at trial, it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt. House, 547 U.S. at 537-38; Schlup, 513 U.S. at 327.

In this case, petitioner presents evidence that Stephan White was available to testify to the following facts: (1) he was a friend to petitioner and his family; (2) he acted as a "lay counselor" for petitioner and Delia before and during their divorce; (3) he spent a great deal of time with the family and was familiar with petitioner's relationship with his family; (4) during divorce settlement discussions, it was Delia's position that petitioner get nothing; (5) B.C. did not show any signs of fear of petitioner; (6) the children were more intimidated by their mother; and (7) he never saw petitioner abuse animals. Pet.'s Exh. H.

White's affidavit reveals no personal knowledge concerning the sex abuse allegations. His omitted testimony is cumulative of the sixteen witnesses that testified that petitioner had a normal relationship with his daughter.[1] White's testimony concerning the divorce proceedings between petitioner and B.C. may have been useful to petitioner, but somewhat cumulative of the testimony given by petitioner's divorce attorney. In light of the testimony of B.C., her mother, her siblings, and the expert testimony of Drs. Speckman and Weeks, it is unlikely that this newly presented testimony would have altered the outcome of the trial.

Petitioner also presents evidence that Steve Chapman was available to testify that (1) he shot B.C.'s dog Morgan; (2) B.C. did not appear upset by the shooting; (3) Delia was in control of the family's money; (4) B.C. appeared to get along well with petitioner; and (5) in August, 2003, B.C. told him that she had lied about petitioner sexually abusing her. Pet.'s Exh. F. Linda Eisenberg, B.C.'s half-sister, confirmed that B.C. told Steve, years after the trial, that she had lied. Pet.'s Exh. G.

Steve Chapman's attestation that he, not petitioner, shot B.C.'s dog Morgan, is collateral to the issue of sexual abuse and,

---

[1] The same is true with regard to the affidavits of petitioner's ex-wife Stella Chapman, and a daughter from his marriage to Rose Chapman, who expressed their opinions that "sexual abuse is out of character" for petitioner. Pet.'s Exhs. I & J.

11 -- FINDINGS AND RECOMMENDATION

in any event, the killing of Morgan was but one example of why B.C. feared her father.  Evidence that Steve Chapman shot Morgan does not substantially undermine B.C.'s credibility given B.C.'s young age when the event occurred; and the fact that all witnesses agree that B.C., petitioner, and Steve Chapman were present when the dog was killed.  Likewise, Chapman's attestation stands in contradiction to Dr. Speckman's testimony that petitioner admitted to killing the dog.

The attestations of Linda Eisenberg and Steve Chapman, that B.C. told Steve that she lied at trial about the sexual abuse would have some impeachment value.  However, given the totality of the evidence presented at trial, I conclude that its impeachment value is not so great as to undermine confidence in the outcome of the trial.  First, it is important to note that this is not a case in which the petitioner has presented direct evidence of a recantation by the victim.  Rather, it is hearsay evidence by a family member who lived with petitioner and the victim for a short period of time.  Moreover, even if the testimony of Steve Chapman and Linda Eisenberg is credible, a reasonable juror could choose to believe B.C.'s trial testimony, rather than what she told her step-brother years after her father's conviction.  See Smith v. Baldwin, 510 F.3d 1127, 1141-42 & n.11 (9th Cir. 2007), cert. denied, 129 S.Ct. 37 (2008). Accordingly, petitioner has not made a colorable claim of actual innocence, and habeas review is precluded as to this

12 -- FINDINGS AND RECOMMENDATION

ground for relief. Petitioner's alternate request for a hearing is denied on the basis that petitioner has not established that an evidentiary hearing would produce evidence more reliable or more probative than the affidavits presented. See Griffin v. Johnson, 350 F.3d 956, 966 (9th Cir. 2003), cert. denied, 541 U.S. 998 (2004).

## II.   The Merits: Ground for Relief Five.

In his fifth ground for relief, petitioner alleges that trial counsel was ineffective for failing to investigate and present the testimony of Steve Chapman and Stephan White.[2] Because discrete claims of ineffective assistance of counsel must be exhausted,[3] I conclude that petitioner procedurally defaulted his claim that counsel was ineffective for failing to call Steve Chapman as a witness.

In the state post-conviction proceeding, petitioner alleged that trial counsel failed to properly investigate and call witnesses who would have testified to "plaintiff's character, morality and his relationship with his children" and to the fact that Delia "was manipulative, controlling and certainly not afraid

---

[2] In his reply brief, petitioner does not pursue his claim that trial counsel was ineffective for failing to obtain B.C.'s medical records. See Reply Brief at 2. In any event, the claim is procedurally defaulted for failing to raise it on appeal from the denial of post-conviction relief.

[3] Moormann v. Schriro, 426 F.3d 1044, 1056 (9th Cir. 2005), cert. denied, 548 U.S. 927 (2005).

13 -- FINDINGS AND RECOMMENDATION

of" petitioner. Resp. Exhs. 108 & 109 at 5. On appeal to the Oregon Court of Appeals and Supreme Court, in contrast, petitioner limited his challenge to counsel's failure to call Stephan White as a witness. No mention of Steve Chapman was made on appeal. Petitioner has failed to demonstrate cause and prejudice, or make a colorable claim of actual innocence sufficient to overcome this procedural default.

In any event, petitioner's ineffective assistance of counsel claims, as to both witnesses, fail on the merits. A claim of ineffective assistance of counsel, requires petitioner to prove that counsel's performance fell below an objective standard of reasonableness, and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Bell v. Cone, 535 U.S. 685, 695 (2002); Williams v. Taylor, 529 U.S. 362, 390-91 (2000); Strickland v. Washington, 466 U.S. 668, 687-88 (1987). In evaluating proof of prejudice, this court "must consider the totality of the evidence" before the jury. Strickland, 466 U.S. at 696.

With regard to Steve Chapman, petitioner offers no evidence to overcome the factual findings by the post-conviction court, that trial counsel acted reasonably in attempting to locate Steve Chapman, but was unable to do so because he was actively evading

14 -- FINDINGS AND RECOMMENDATION

all investigators. Resp. Exh. 167 at 5.[4] Because this factual finding is presumed correct under 28 U.S.C. § 2254(e)(1), petitioner has failed to demonstrate that trial counsel's conduct fell below an objective standard of reasonableness.

With respect to trial counsel's failure to call Stephan White as a witness, petitioner has failed to demonstrate that he suffered prejudice as a result of trial counsel's omission. At the state post-conviction proceeding, petitioner submitted a letter by Stephan White expressing his opinion that petitioner had not received a fair trial. With regard to factual information to which he could testify, White stated only that he had "first hand knowledge of information relating to the Chapman family dynamics" because he had served as a "lay counselor to both Mr. and Mrs. Chapman"; and that he "had a purposeful private conversation with the accusing daughter (before her accusation)." (Resp. Exh. 118.)

In a subsequent affidavit submitted to the post-conviction court, Stephan White attests as follows:

1. I am a business person in the city of Bend, Oregon.

2. I also am acquainted with Neil and Delia Chapman. I had counseled both of them before and during the divorce proceeding, as a friend and lay person.

3. Delia Chapman was unwilling to bend in the divorce negotiations relating to property distribution.

---

[4] The post-conviction court incorrectly refers to Steve Chapman, as Chris Chapman, another one of petitioner's sons. Pet.'s Memo. at 16.

>           She wanted to receive everything and leave nothing
>           for Mr. Chapman.
>
> 4.    A short time later, the allegations of sexual abuse
>       began to circulate.
>
>                         * * * *
>
> 6.    I have witnessed the true relationship Mr. Chapman
>       has with his children in that they were not in fear
>       of him.  The children were always happy to be
>       around Neil.
>
> 7.    Given all the time I have spent with the Chapmans,
>       I would have seen some type of behavior or heard
>       some comment indicative of some abuse.

Resp. Exh. 129.

As noted above, White's attestation is vague and largely cumulative of the many witnesses that testified to petitioner's "normal" relationship with his children.  Mr. White does not assert that he has any personal knowledge of the sexual abuse allegations.  Although White may have been able to offer testimony that Delia had a motive to falsely accuse petitioner of sexual abuse, given the totality of the evidence presented at trial (including the testimony of petitioner's divorce attorney concerning the contentious nature of the divorce proceedings), there is no reasonable probability that, but for counsel's failure to offer White's testimony, the result of the proceeding would have been different.  Accordingly, the state court's rejection of this claim is neither contrary to, nor an unreasonable application of, clearly established federal law.  28 U.S.C. § 2254(d).

16 -- FINDINGS AND RECOMMENDATION

Petitioner's alternate request for an evidentiary hearing should be denied on the basis that petitioner has not shown that an evidentiary hearing would produce evidence more reliable or more probative than that already presented. See Griffin, 350 F.3d at 966.

## CONCLUSION

Based on the foregoing, petitioner's second amended petition (#34) should be denied, and this proceeding should be dismissed.

## SCHEDULING ORDER

The above Findings and Recommendation are referred to a United States District Judge for review. Objections, if any, are due February 19, 2009. If no objections are filed, the Findings and Recommendations will go under advisement on that date.

If objections are filed, a response to the objections is due March 5, 2009, and the review of the Findings and Recommendation will go under advisement on that date.

DATED this _4th___ day of February, 2009.

/s/ Dennis J. Hubel

_____
Dennis J. Hubel
United States Magistrate Judge

17 -- FINDINGS AND RECOMMENDATION